Todd J. Krakower (TK-4568)
KRAKOWER DICHIARA LLC
100 Church St, 8th Fl
New York, NY 10007
Telephone: (201) 746-6333
Fax: (347) 765-1600
*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

**ALEXIS MORALES,**

|  |  |
|---|---|
| **Plaintiff,** | <u>**COMPLAINT**</u> |
| -against- | _____-cv-_____ (\_\_\_) |
|  | **DEMAND FOR JURY TRIAL** |

**J.K. MANAGEMENT CORP., 765 RIVERSIDE**
**CO., 1970 REALTY LLC, JACOB KEMPLER,**
**Individually, DAVID BLAU, Individually, and**
**ESTHER JENKELOWITZ, Individually,**

                                      **Defendants.**
-------------------------------------------------------------------x

Plaintiff, ALEXIS MORALES, by and through his attorneys, upon personal knowledge as to himself and upon information and belief as to other matters, brings this Complaint against Defendants J.K. MANAGEMENT CORP., 765 RIVERSIDE CO., 1970 REALTY LLC, DAVID BLAU, Individually, and ESTHER JENKELOWITZ, Individually, and alleges as follows:

**PRELIMINARY STATEMENT**

1.     Plaintiff brings this lawsuit seeking recovery against Defendants for Defendants' violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"); Defendant's violations of New York Labor Law, N.Y. Lab. Law §§ 650, *et seq.* ("NYLL"); and Defendant's violations of all other appropriate rules, regulations, and statutes.

2.      Plaintiff additionally brings this lawsuit seeking recovery against Defendants for Defendants' violations of the New York Administrative Code §20-911, *et seq*. ("NYC Sick and Safe Leave Law"), and the New York Business Corporation Law § 630.

## JURISDICTION AND VENUE

3.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b) because this case is brought under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA").

4.      This Court has supplemental jurisdiction over the New York state law claims under 28 U.S.C. § 1367(a), as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue is proper in this District because Defendants conduct business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

**Defendant J.K. Management Corp.**

6.      Defendant J.K. Management Corp. ("JK") is a for-profit corporations organized and existing under the laws of the State of New York.

7.      Defendant JK maintains executive offices and/or a principal place of business at 303 Beverly Rd, Brooklyn, New York, in Kings County.

8.      Upon information and belief, Defendant JK manages the building located at 765 Riverside Dr., New York, New York (the "765 Building").

9.      Upon information and belief, Defendant JK manages the building located at 1970 E. 18th Street, Brooklyn, New York (the "1970 Building").

2

10.     Upon information and belief, at times relevant to this Complaint, the gross receipts of Defendant JK were not less than $500,000.

11.     At all times relevant to this Complaint, Defendant JK was engaged in an industry having an effect on commerce within the meaning of 29 U.S.C. § 203.

12.     At all times relevant to this Complaint, Defendant JK was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed Plaintiff.

13.     At all times relevant to this Complaint, Defendant JK was and is an employer within the meaning of the NYLL § 190(3) and § 651(6) and, at all times relevant to this Complaint, employed Plaintiff.

14.     At all times relevant to this Complaint, Defendant JK routinely conducted, and continues to routinely conduct, business within the State of New York and within the County of Kings.

**Defendant 765 Riverside Co.**

15.     Defendant 765 Riverside Co. ("765") is a for-profit corporation organized and existing under the laws of the State of New York.

16.     Defendant 765 maintains executive offices and/or a principal place of business at 303 Beverly Rd, Brooklyn, New York, in Kings County.

17.     Upon information and belief, Defendant 765 owns and operates the 765 Building.

18.     Upon information and belief, at times relevant to this Complaint, the gross receipts of Defendant 765 were not less than $500,000.

19.     At all times relevant to this Complaint, Defendant 765 was engaged in an industry having an effect on commerce within the meaning of 29 U.S.C. § 203.

20.     At all times relevant to this Complaint, Defendant 765 was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed Plaintiff.

21.     At all times relevant to this Complaint, Defendant 765 was and is an employer within the meaning of the NYLL § 190(3) and § 651(6) and, at all times relevant to this Complaint, employed Plaintiff.

22.     At all times relevant to this Complaint, Defendant 765 routinely conducted, and continues to routinely conduct, business within the State of New York and within the County of Kings.

**Defendant 1970 Realty LLC**

23.     Defendant 1970 Realty LLC ("1970") is a for-profit corporation organized and existing under the laws of the State of New York.

24.     Defendant 1970 maintains executive offices and/or a principal place of business at 303 Beverly Rd, Brooklyn, New York, in Kings County.

25.     Upon information and belief, Defendant 1970 owns and operates the 1970 Building.

26.     Upon information and belief, at times relevant to this Complaint, the gross receipts of Defendant 765 were not less than $500,000.

27.     At all times relevant to this Complaint, Defendant 1970 was engaged in an industry having an effect on commerce within the meaning of 29 U.S.C. § 203.

28.     At all times relevant to this Complaint, Defendant 1970 was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed Plaintiff.

29.     At all times relevant to this Complaint, Defendant 1970 was and is an employer within the meaning of the NYLL § 190(3) and § 651(6) and, at all times relevant to this Complaint, employed Plaintiff.

30.     At all times relevant to this Complaint, Defendant 1970 routinely conducted, and continues to routinely conduct, business within the State of New York and within the County of Kings.

**Defendant Jacob Kempler**

31.     Upon information and belief, Defendant Jacob Kempler ("Kempler") was an officer and/or director of Defendant JK.

32.     Upon information and belief, Defendant Kempler was an officer and/or director of Defendant 765.

33.     Upon information and belief, Defendant Kempler was an officer and/or director of Defendant 1970.

34.     At all times relevant to this Complaint, Defendant Kempler had power over personnel decisions at Defendant JK, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

35.     At all times relevant to this Complaint, Defendant Kempler had power over personnel decisions at Defendant 765, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

36.     At all times relevant to this Complaint, Defendant Kempler had power over personnel decisions at Defendant 1970, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

37.     Upon information and belief, at all times relevant to this Complaint, Defendant Kempler had the power to determine employee policies at Defendant JK, including, but not limited to determining whether employees are paid for all hours worked and whether employees are paid overtime wages.

38.     Upon information and belief, at all times relevant to this Complaint, Defendant Kempler had the power to determine employee policies at Defendant 765, including, but not limited to determining whether employees are paid for all hours worked and whether employees are paid overtime wages.

39.     Upon information and belief, at all times relevant to this Complaint, Defendant Kempler had the power to determine employee policies at Defendant 1970, including, but not limited to determining whether employees are paid for all hours worked and whether employees are paid overtime wages.

40.     Upon information and belief, at all times relevant to this Complaint, Defendant Kempler was actively involved in managing the day-to-day operations of Defendant JK.

41.     Upon information and belief, at all times relevant to this Complaint, Defendant Kempler was actively involved in managing the day-to-day operations of Defendant 765.

42.     Upon information and belief, at all times relevant to this Complaint, Defendant Kempler was actively involved in managing the day-to-day operations of Defendant 1970.

43.     At all times relevant to this Complaint Defendant Kempler was and is an employer within the meaning of the NYLL § 190(3) and § 651(6), and employed employees, including Plaintiff**.**

44.     At all times relevant to this Complaint, Defendant Kempler was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed Plaintiff.

**Defendant David Blau**

45.     Upon information and belief, Defendant David Blau ("Blau") was an officer and/or director of Defendant JK.

46.     Upon information and belief, Defendant Blau was an officer and/or director of Defendant 765.

47.     Upon information and belief, Defendant Blau was an officer and/or director of Defendant 1970.

48.     At all times relevant to this Complaint, Defendant Blau had power over personnel decisions at Defendant JK, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

49.     At all times relevant to this Complaint, Defendant Blau had power over personnel decisions at Defendant 765, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

50.     At all times relevant to this Complaint, Defendant Blau had power over personnel decisions at Defendant 1970, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

51.     Upon information and belief, at all times relevant to this Complaint, Defendant Blau had the power to determine employee policies at Defendant JK, including, but not limited to determining whether employees are paid for all hours worked and whether employees are paid overtime wages.

52.     Upon information and belief, at all times relevant to this Complaint, Defendant Blau had the power to determine employee policies at Defendant 765, including, but not limited to determining whether employees are paid for all hours worked and whether employees are paid overtime wages.

53.     Upon information and belief, at all times relevant to this Complaint, Defendant Blau had the power to determine employee policies at Defendant 1970, including, but not limited to determining whether employees are paid for all hours worked and whether employees are paid overtime wages.

54.     Upon information and belief, at all times relevant to this Complaint, Defendant Blau was actively involved in managing the day-to-day operations of Defendant JK.

55.     Upon information and belief, at all times relevant to this Complaint, Defendant Blau was actively involved in managing the day-to-day operations of Defendant 765.

56.     Upon information and belief, at all times relevant to this Complaint, Defendant Blau was actively involved in managing the day-to-day operations of Defendant 1970.

57.     At all times relevant to this Complaint Defendant Blau was and is an employer within the meaning of the NYLL § 190(3) and § 651(6), and employed employees, including Plaintiff.

58.     At all times relevant to this Complaint, Defendant Blau was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed Plaintiff.

**Defendant Esther Jenkelowitz**

59.     Upon information and belief, Defendant Esther Jenkelowitz ("Jenkelowitz") was an officer and/or director of Defendant JK.

60.     Upon information and belief, Defendant Jenkelowitz was an officer and/or director of Defendant 765.

61.     Upon information and belief, Defendant Jenkelowitz was an officer and/or director of Defendant 1970.

62.     At all times relevant to this Complaint, Defendant Jenkelowitz had power over personnel decisions at Defendant JK, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

63.     At all times relevant to this Complaint, Defendant Jenkelowitz had power over personnel decisions at Defendant 765, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

64.     At all times relevant to this Complaint, Defendant Jenkelowitz had power over personnel decisions at Defendant 1970, including the power to hire and fire employees, set their wages, and otherwise control the terms and conditions of their employment.

65.     Upon information and belief, at all times relevant to this Complaint, Defendant Jenkelowitz had the power to determine employee policies at Defendant JK, including, but not limited to determining whether employees are paid for all hours worked and whether employees are paid overtime wages.

66.     Upon information and belief, at all times relevant to this Complaint, Defendant Jenkelowitz had the power to determine employee policies at Defendant 765, including, but not limited to determining whether employees are paid for all hours worked and whether employees are paid overtime wages.

67.     Upon information and belief, at all times relevant to this Complaint, Defendant Jenkelowitz had the power to determine employee policies at Defendant 1970, including, but not

limited to determining whether employees are paid for all hours worked and whether employees are paid overtime wages.

68.    Upon information and belief, at all times relevant to this Complaint, Defendant Jenkelowitz was actively involved in managing the day-to-day operations of Defendant JK.

69.    Upon information and belief, at all times relevant to this Complaint, Defendant Jenkelowitz was actively involved in managing the day-to-day operations of Defendant 765.

70.    Upon information and belief, at all times relevant to this Complaint, Defendant Jenkelowitz was actively involved in managing the day-to-day operations of Defendant 1970.

71.    At all times relevant to this Complaint Defendant Jenkelowitz was and is an employer within the meaning of the NYLL § 190(3) and § 651(6), and employed employees, including Plaintiff.

72.    At all times relevant to this Complaint, Defendant Jenkelowitz was and is a covered employer within the meaning of the FLSA, 29 U.S.C. § 203(d) and, at all times relevant to this Complaint, employed Plaintiff.

**Plaintiff Alexis Morales**

73.    Plaintiff was employed by Defendants as from approximately October 2018 until on or about May 16, 2022.

### FACTS

74.    Defendants undertook the following acts and omissions knowingly, willfully, and intentionally.

75.    All actions and omissions described in this Complaint were made by Defendants directly and/or through their supervisory employees and agents.

## WAGE AND HOUR VIOLATIONS

76.     Plaintiff was employed by Defendants to provide janitorial services.

**Plaintiff Works as a Helper (October 2018 through August 2019).**

77.     Plaintiff began working for Defendants at the 1970 Building.

78.     Plaintiff began working for Defendants in or around October 2018.

79.     At that time, Felix Molina ("Molina") was the superintendent of Defendant's 1970 Building.

80.     Molina hired Plaintiff as his helper.

81.     It was common practice for Defendants' superintendents to hire helpers to work on Defendants' buildings.

82.     Molina had previously hired other individual(s) to work as his helper.

83.     Molina had individual(s) working for him as a helper for six or more years prior to hiring Plaintiff as his helper.

84.     Defendant Jenkelowitz became aware in October 2018 that Molina hired Plaintiff as a helper.

85.     Shortly thereafter, Joseph Doe ("Doe"), Defendants' head building manager, became aware that Plaintiff was working for Defendants.

86.     Thus, starting in October 2018, and with the full knowledge of Defendants, Plaintiff began working as a full-time helper at Defendant's 1970 Building.

87.     As a helper, each night Molina provided Plaintiff with a list of assignments for the following day.

88.     As a helper, Plaintiff's daily tasks included, but were not limited to, porter and superintendent duties depending on the building's needs that day.

11

89.     As a helper, Plaintiff was scheduled to work from 9am until 5:30pm, seven days per week, to complete his daily tasks.

90.     In addition to Plaintiff's scheduled work hours as a helper, Plaintiff was regularly required to continue working past 5:30pm to complete his daily tasks.

91.     As a helper, Plaintiff was regularly required to continue working through lunch.

92.     As a result, Plaintiff was required to work approximately 60 hours of work per week as a helper.

93.     Plaintiff was compensated $150 every two weeks while he was employed as a helper.

94.     In June 2019, Molina took a scheduled vacation to Florida.

95.     Prior to leaving on vacation, Molina told Plaintiff that Plaintiff would be the acting superintendent in his absence and that Plaintiff would be responsible for all 100 units at Defendants' 1970 Building.

96.     Upon information and belief, Molina confirmed with Defendant Jenkelowitz and Doe that Plaintiff would be the acting superintendent of the 1970 Building in his absence.

97.     Molina provided both Defendant Jenkelowitz and Doe with Plaintiff's personal cell phone number in the event Defendants needed to contact Plaintiff for superintendent duties in Molina's absence.

98.     While Molina was on vacation, Plaintiff became the primary contact for the building's residents who required repairs or other assistance with their units.

99.     As the acting superintendent of Defendants' 1970 Building, Defendants regularly contacted Plaintiff to request that he perform certain tasks.

100.    As acting superintendent of Defendants' 1970 Building, Plaintiff performed all tasks as he was directed by Defendants.

101.    While working as the acting superintendent of Defendants' 1970 Building, Plaintiff continued to work approximately 60 hours each week.

102.    While working as the acting superintendent of Defendants' 1970 Building, Defendants failed to compensate Plaintiff **anything** for his time during those weeks.

103.    While Plaintiff was employed as a helper, Defendants failed to compensate Plaintiff minimum wage.

104.    While Plaintiff was employed as a helper, Defendants failed to compensate him any overtime compensate for hours worked beyond 40 in a week.

105.    While Plaintiff was employed as a helper, Defendants failed to track Plaintiff's work hours.

106.    While Plaintiff was employed as a helper, Defendants failed to maintain accurate time records of Plaintiff's work hours.

**Plaintiff is Promoted and Works as a Handyman and Elevator Operator (August 2019 through February 2022).**

107.    In or about late June or early July 2019, Molina was reassigned to work as the superintendent at Defendants' 765 Riverside Dr., New York, New York location (the "765 Building").

108.    Molina asked Plaintiff to continue working for him as helper at Defendants' 765 Building.

109.     As incentive for the transfer, Molina and Defendant Jenkelowitz promised Plaintiff that Plaintiff would be promoted to handyman and would receive a raise.

110.    Plaintiff accepted Defendants' offer.

111.    Beginning August 2019, Plaintiff began working as Defendants' handyman at Defendants' 765 Building.

112.    As handyman, Plaintiff was required to work approximately 60 hours per week, including work on weekends.

113.    As handyman, Defendants compensated Plaintiff $500 each week.

114.    While Plaintiff was employed as a handyman, Defendants failed to compensate Plaintiff minimum wage.

115.    While Plaintiff was employed as a handyman, Defendants failed to compensate him any overtime compensate for hours worked beyond 40 in a week.

116.    While Plaintiff was employed as a handyman, Defendants failed to track Plaintiff's work hours.

117.    While Plaintiff was employed as a handyman, Defendants failed to maintain accurate time records of Plaintiff's work hours

118.    In clear recognition of Plaintiff hard work and consistent performance, Defendants quickly promoted Plaintiff again.

119.    In September 2019, Defendants promoted Plaintiff to the position of elevator operator at Defendants' 765 Building.

120.    As elevator operator, Plaintiff was scheduled to work from 4pm until 12am, five days per week.

121.    In addition to Plaintiff regularly scheduled work hours, Plaintiff was required to work approximately 4 hours per day as Molina's helper prior to the start of each shift and on Plaintiff's days off.

122.    Further, in addition to his regularly scheduled work hours and his work hours as Molina's helper, approximately once or twice per week, Plaintiff was required to start his elevator operator shift three hours early, at approximately 1pm, because the porter had left for the day.

123.    In total, Plaintiff was required to work approximately 65-75 hours each week as elevator operator from September 2019 until March 2020.

124.    Beginning in March 2020, Plaintiff was required to spend an additional hour cleaning and disinfecting the common areas before the start of his shift.

125.    Thus, beginning in March 2020 and throughout the remainder of his employment as elevator, Plaintiff worked approximately 70-80 hours each week.

126.    While Plaintiff was employed as an elevator operator, Defendants compensated him $13.50 per hour for 40 hours each week.

127.    While Plaintiff was employed as an elevator operator, Defendants failed to compensate Plaintiff minimum wage.

128.    While Plaintiff was employed as an elevator operator, Defendants failed to compensate him any overtime compensate for hours worked beyond 40 in a week.

129.    While Plaintiff was employed as an elevator operator, Defendants failed to track Plaintiff's work hours.

130.    While Plaintiff was employed as an elevator operator, Defendants failed to maintain accurate time records of Plaintiff's work hours.

**Plaintiff's Complaints of Unpaid Wages and His Promotion to Superintendent (February 2022 through May 2022).**

131.    Throughout Plaintiff's employment with Defendants, he repeatedly complained to Molina about Defendants' failure to properly compensate him.

132.    Each time Plaintiff complained, Molina chastised him for complaining and threatened him with termination if he continued to complain.

133.    Specifically, Molina repeatedly warned Plaintiff that he needed to "be quiet or be fired."

134.    After years of Molina's threats, Plaintiff eventually mustered the courage to complain to John, Defendants' assistant building manager, about Defendants' unlawful pay policies.

135.    In response, John scheduled a meeting with Plaintiff and Molina.

136.    Rather than remedy the years of unlawful pay violations, Defendants attempted to placate and silence Plaintiff by promoting him to the position of superintendent at Defendants' 765 Building on a three-month "trial basis".

137.    At the same time Plaintiff was promoted to superintendent, Defendants demoted Molina to elevator operator.

138.    Plaintiff assumed all duties of superintendent of Defendants' 765 Building as of February 1, 2022.

139.    Defendants did not provide Plaintiff with the superintendent title or a raise for assuming the superintendent duties until February 16, 2022.

140.    As superintendent, Plaintiff was scheduled to work 40 hours per week.

141.    As superintendent, Plaintiff was required to work an additional approximately 20 overtime hours per week performing repairs and emergency services outside of his scheduled work hours.

142.    As superintendent, Plaintiff was required to work an additional 10-15 overtime hours per week to perform elevator operator duties.

143.    As a result, Plaintiff was required to work approximately 70-75 hours of work per week as a superintendent.

144.    As superintendent, Defendants compensated Plaintiff $17.50 per hour.

145.    As superintendent, Defendants failed to compensate Plaintiff anything for hours worked in excess of 40 in a week.

146.    While Plaintiff was employed as an elevator operator, Defendants failed to compensate him any overtime compensate for hours worked beyond 40 in a week.

147.    While Plaintiff was employed as superintendent, Defendants failed to track Plaintiff's work hours.

148.    While Plaintiff was employed as superintendent, Defendants failed to maintain accurate time records of Plaintiff's work hours.

**Plaintiff's Complaints of Safety Violations and Other Engagement in Protected Activity, and Defendants' Unlawful Termination of Plaintiff.**

149.    Immediately after Plaintiff was promoted into the superintendent role, Defendants began to assign Plaintiff tasks that he believed to be dangerous and unsafe.

150.    On May 16, 2022, Defendants summarily terminated Plaintiff's employment.

151.    Notably, upon Plaintiff's termination, Doe told Plaintiff that Plaintiff's "problem", and the reason for his termination, was that he was "too righteous"—thus confirming that Plaintiff was terminated for complaining of wage and hour violations and unsafe tasks.

**<u>UNLAWFUL DEDUCTIONS</u>**

152.    Further, throughout Plaintiff's employment—and, in particular, during Plaintiff's tenure as superintendent—Plaintiff was required to expend significant sums of money to purchase necessary tools and equipment for work.

153.    During Plaintiff's tenure as superintendent, Plaintiff was required to expend significant sum of money to compensate other employees for their labor.

154.    By failing to compensate Plaintiff for expenses paid for tools, equipment, and/or labor, Defendants violated the NYLL's provisions prohibiting unlawful wage deductions.

**OTHER NYLL VIOLATIONS**

155.    Throughout Plaintiff's employment, Defendants paid Plaintiff's wages without the proper accompanying statement listing the overtime rate or rates of pay, the number of regular hours worked and the number of overtime hours worked, gross wages, deductions, allowances, if any, claimed as part of the minimum wage, and net wages.

156.    Plaintiff was never given a notice containing the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer in accordance with NYLL §195(1); the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; and anything otherwise required by law.

157.    Throughout Plaintiff's employment, Defendants did not provide Plaintiff with a statement of wages with each payment of wages, as required by NYLL § 195(3).

**VIOLATIONS OF SICK AND SAFE LEAVE LAWS**

158.    During Plaintiff's employment Plaintiff required sick leave.

159.    At various times during Plaintiff's employment Plaintiff notified his supervisor, Molina, of his need to take sick leave.

160.    In response to Plaintiff's request for sick leave, Molina threatened Plaintiff with termination if he took sick leave.

161.    Molina directed Plaintiff to continue working through illnesses and injuries to "prove" that he wanted to be employed by Defendants.

162.    Molina informed Plaintiff that he would be terminated and replaced if he took sick leave.

163.    Molina refused to permit Plaintiff to take sick leave.

164.    Defendants prevented Plaintiff from taking sick leave.

165.    Defendants failed to provide Plaintiff paid sick leave.

## FIRST CLAIM FOR RELIEF
### FLSA Minimum Wage Violations, 29 U.S.C. §§ 201 *et seq.*

166.    Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

167.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

168.    At all relevant times, Defendants have employed, "employee[s]," including Plaintiff.

169.    While Plaintiff was employed as a helper and as a handyman, Defendants failed to compensate Plaintiff at the federal minimum wage rate.

170.    At all relevant times, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay employees the minimum wage for work, and willfully

failing to keep records required by the FLSA even though Defendants' employees have been and are entitled to overtime.

171.    Plaintiff seeks damages in the amount of his unpaid compensation, liquidated (double) damages as provided by the FLSA for overtime violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### FLSA Overtime Violations, 29 U.S.C. §§ 201 *et seq.*

172.    Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

173.    At all relevant times, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of FLSA, 29 U.S.C. § 203.

174.    At all relevant times, Defendant employed employees, including Plaintiff.

175.    During the statute of limitations period covered by these claims, Plaintiff regularly worked in excess of forty (40) hours per workweek.

176.    At all times relevant to this Complaint, Plaintiff was not exempt from overtime under the Fair Labor Standards Act.

177.    At all times relevant to this Complaint, Defendants had and operated under a decision, policy and plan, and under common policies, programs, practices, procedures, protocols, routines and rules of willfully failing and refusing to pay employees, including Plaintiff, overtime pay.

178.    Plaintiff seeks damages in the amount of his unpaid overtime compensation, liquidated (double) damages as provided by the FLSA for hourly wage and overtime wage

violations, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

### THIRD CLAIM FOR RELIEF
### Retaliation in Violation of the Fair Labor Standards Act

179.    Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

180.    At various times during her employment with Defendants, Plaintiff raised complaints concerning her failure to be properly compensated, including issues concerning Defendants' failure to pay Plaintiff wages and other guaranteed or earned compensation.

181.    When Plaintiff raised complaints about lack of compensation and failure to receive wages and/or bonuses and/or other guaranteed or earned compensation, Defendants responded by immediately and summarily terminating Plaintiff's employment.

182.    Defendants' retaliatory acts immediately followed Plaintiff's complaints for violations of the FLSA and such acts are in direct violation of Plaintiff's rights under 29 U.S.C. § 215(a)(3).

183.    Plaintiff engaged in the protected activity of complaining to his employer regarding issues of overtime and other owed compensation.

184.    A causal link exists between the protected activity and adverse employment action as Defendants knew of Plaintiff's activities and complaints, and Defendants' retaliatory acts were a direct result of such complaints.

185.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable injuries and damages.

186.    Plaintiff seeks relief as provided by 29 U.S.C. § 216(b), including, without limitation backpay for lost wages, and/or bonuses and/or other guaranteed or earned compensation,

or diminishment, loss of other benefits, and any and all such legal or equitable relief as may be appropriate to effectuate for purposes of Section 215(a)(3), including but not limited to compensatory damages for mental anguish and emotional distress and other injuries incurred as a result of the retaliation.

187.    As Defendants' retaliatory actions, including but not limited to the dismissal of Plaintiff, were willful, malicious, and/or with conscious disregard of Plaintiff's statutorily protected rights, Plaintiff is entitled to an award of punitive damages.

188.    Plaintiff also request damages for such additional relief as justice may require, together with costs, attorney fees, pre-judgment interest, post-judgment interest, and other appropriate relief as the Court may grant in this action.

**FOURTH CLAIM FOR RELIEF**
**Minimum Violations of the**
**New York Minimum Wage Act, N.Y. Stat. § 650 *et seq.***

189.    Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

190.    It is unlawful under New York law for an employer to suffer or permit an employee to work without paying minimum wages for all hours worked.

191.    While Plaintiff was employed as a helper and as a handyman, Defendants willfully, regularly and repeatedly failed to pay Plaintiff the minimum wages for hours.

192.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff has sustained damages, including loss of earnings, in an amount to be established at trial, liquidated damages, prejudgment interest, and costs, and attorneys' fees, pursuant to N.Y. Lab. Law § 663.

**FIFTH CLAIM FOR RELIEF**
**Overtime Violations of the**
**New York Minimum Wage Act, N.Y. Stat. § 650** *et seq.*

193.    Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

194.    It is unlawful under New York law for an employer to suffer or permit a non-exempt employee to work without paying overtime wages for all hours worked in excess of forty (40) hours in any workweek.

195.    During the period of Plaintiff's employment with Defendants, Defendants willfully, regularly and repeatedly failed to pay Plaintiff for actual time worked at the required overtime rates, one and a half times the minimum wages for hours worked in excess of forty (40) hours per workweek.

196.    Plaintiff was not exempt from overtime under New York Labor Law.

197.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff has sustained damages, including loss of earnings, in an amount to be established at trial, liquidated damages, prejudgment interest, and costs, and attorneys' fees, pursuant to N.Y. Lab. Law § 663.

**SIXTH CLAIM FOR RELIEF**
**Retaliation in Violation of New York Labor Law § 215(1)**

198.    Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

199.    At various times during her employment with Defendants, Plaintiff raised complaints concerning her failure to be properly compensated, including issues concerning Defendants' failure to pay Plaintiff wages and other guaranteed or earned compensation.

200.    When Plaintiff raised complaints about lack of compensation and failure to receive wages and/or bonuses and/or other guaranteed or earned compensation, Defendants responded by immediately and summarily terminating Plaintiff's employment.

201.    Defendants' retaliatory acts immediately followed Plaintiff's complaints for violations of New York State Labor Law are in direct violation of Plaintiff's rights under New York Labor Law § 215(1).

202.    Plaintiff engaged in the protected activity of complaining to his employer regarding issues of overtime and other owed compensation.

203.    A causal link exists between the protected activity and adverse employment action as Defendants knew of Plaintiff's activities and complaints, and Defendants' retaliatory acts were a direct result of such complaints.

204.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered irreparable injuries and damages.

205.    Plaintiff seeks relief as provided by New York Labor Law § 215(2), including, without limitation backpay for lost wages, bonuses and/or other guaranteed or earned compensation, or diminishment, loss of other benefits, and any and all such legal or equitable relief as may be appropriate to effectuate for purposes of New York Labor Law § 215(2), including but not limited to compensatory damages for mental anguish and emotional distress and other injuries incurred as a result of the retaliation.

206.    As Defendants' retaliatory actions, including but not limited to the dismissal of Plaintiff, were willful, malicious, and/or with conscious disregard of plaintiff's statutorily protected rights, Plaintiff is entitled to an award of punitive damages.

207.    Plaintiff also request damages for such additional relief as justice may require, together with costs, attorney fees, pre-judgment interest, post-judgment interest, and other appropriate relief as the Court may grant in this action.

### SEVENTH CLAIM FOR RELIEF
**Violation of the Notice and Recordkeeping
Requirements of the New York Labor Law**

208.    Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

209.    Defendants failed to provide Plaintiff with a written notice containing: the rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the names of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by NYLL § 195(1).

210.    Defendants are liable to Plaintiff in the amount of $5,000, together with costs and attorneys' fees.

### EIGHTH CAUSE OF ACTION
**Violation of the Wage Statement Provisions of the
New York Labor Law**

211.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

212.    With each payment of wages, Defendants failed to provide Plaintiff with a statement listing each of the following the dates of work covered by the payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and

basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; the number of regular hours worked; the number of overtime hours worked, as required by the NYLL § 195(3).

213. Defendants are liable to Plaintiff in the amount of 5,000, together with costs and attorneys' fees.

### NINTH CLAIM FOR RELIEF
**Unlawful Deductions in Violation of the New York Labor Law**

214. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

215. NYLL §193 prohibits employers from making unlawful deductions from employee's wages.

216. 12 NYCRR §195-4.5 prohibits employers from requiring employees to pay for "tools, equipment and attire required for work" or "employer losses."

217. Defendants required Plaintiff to pay for necessary tools, equipment, and labor.

218. Defendants failed to recompensate Plaintiff for his necessary expenditures.

219. By failing to compensate Plaintiff for his necessary expenditures, Defendants violated Plaintiff's rights pursuant to NYLL §193 and 12 NYCRR §195-4.5.

220. As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff has sustained damages, including loss of earnings, in an amount to be established at trial, liquidated damages, prejudgment interest, and costs, and attorneys' fees, pursuant to N.Y. Lab. Law § 663.

## TENTH CLAIM FOR RELIEF
### Failure to Pay Spread of Hours in Violation of the
### New York Labor Law

221.　The NYLL requires employers to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§190, et seq., and §§650, et seq., and New York State Department of Labor regulations §146-1.6.

222.　Plaintiff's spread of hours from the time he started work to the time he ended work was routinely 10 or more hours.

223.　Plaintiff was entitled to an extra hour's pay each time he worked a spread of hours of at least 10 hours in a day.

224.　Defendants failed to pay Plaintiff an extra hour's pay when he worked a spread of hours of at least 10 hours in a day.

225.　Defendants' failure to pay Plaintiff's spread-of-hours pay was not in good faith.

226.　As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff has sustained damages, including loss of earnings, in an amount to be established at trial, liquidated damages, prejudgment interest, and costs, and attorneys' fees.

## ELEVENTH CLAIM FOR RELIEF
### Violations of the New York Sick and Safe Leave Law

227.　Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

228.　Pursuant to the New York Sick and Safe Leave Law (NYSSL Law), beginning January 1, 2021, New York employers were required to provide employees with one hour of sick leave for every 30 hours worked by the employee.

229.　New York employers with 5 or more employees are required to provide its employees with paid sick leave.

230.    Defendants were required to provide Plaintiff with paid sick leave beginning January 1, 2021 pursuant to the NYSSL Law.

231.    Defendants are prohibited from interfering with employee's rights to take sick leave under the NYSSL Law.

232.    Defendants are prohibited from retaliating against employees for requiring sick leave pursuant to the NYSSL Law.

233.    Defendants refused to provide Plaintiff with sick leave under the NYSSL Law.

234.    Defendants threatened Plaintiff not to take sick leave under the NYSSL Law.

235.    By taking the above actions, Defendants violated Plaintiff's rights pursuant to the NYSSL Law.

236.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff has sustained damages, including loss of earnings, in an amount to be established at trial, liquidated damages, prejudgment interest, and costs, and attorneys' fees.

## TWELFTH CLAIM FOR RELIEF
### Violations of the New York City Paid Sick Leave Law

237.    Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

238.    At all times relevant to this Complaint, Pursuant to the New York City Paid Sick and Safe Leave Law (NYC Sick Leave Law), New York City employers were required to provide employees with one hour of sick leave for every 30 hours worked by the employee.

239.    New York City employers with 5 or more employees are required to provide its employees with paid sick leave.

240.    Defendants were required to provide Plaintiff with paid sick leave beginning January 1, 2021 pursuant to the NYC Sick Leave Law.

241.    Defendants are prohibited from interfering with employee's rights to take sick leave under the NYC Sick Leave Law.

242.    Defendants are prohibited from retaliating against employees for requiring sick leave pursuant to the NYC Sick Leave Law.

243.    Defendants refused to provide Plaintiff with sick leave under the NYC Sick Leave Law

244.    Defendants threatened Plaintiff not to take sick leave under the NYC Sick Leave Law.

245.    By taking the above actions, Defendants violated Plaintiff's rights pursuant to the NYC Sick Leave Law.

246.    As a direct and proximate result of Defendants' unlawful conduct, as set forth herein, Plaintiff has sustained damages, including loss of earnings, in an amount to be established at trial, liquidated damages, prejudgment interest, and costs, and attorneys' fees

### THIRTEENTH CLAIM FOR RELIEF
### Individual Liability Pursuant to NY BCL §630

247.    Plaintiff realleges and incorporates by reference all allegations in the preceding paragraphs.

248.    Pursuant to New York Business Corporation Law Section 630, in addition to their individual liability under the previously plead caused of action, the ten (10) largest shareholders of Defendant JK, shall be liable for all debts, wages, or salaries due and owing to any of its employees for services performed.

249.    Pursuant to New York Business Corporation Law Section 630, in addition to their individual liability under the previously plead caused of action, the ten (10) largest shareholders

of Defendant 765, shall be liable for all debts, wages, or salaries due and owing to any of its employees for services performed

250.   Defendants failed to pay Plaintiff his earned wages in full, including wages for all hours worked.

251.   Defendants failed to pay Plaintiff his earned wages in full, including overtime wages for all hours worked in excess of forty (40) in a workweek.

252.   All of these underpayments constitute "wages" within the meaning of New York Business Corporation Law Section 630.

253.   Plaintiff has provided written notice to Defendants that Plaintiff intends to hold them liable under New York Business Corporation Law Section 630.

254.   As a result of Defendants' willful and unlawful conduct, Plaintiff is entitled to an award of damages in amount to be determined at trial and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered on his behalf in accordance with the above claimed causes of action and requests the following:

A.   All compensatory and economic damages;

B.   All reasonable expenses incurred by Plaintiff, including court costs and reasonable and necessary attorney fees, including attorney's fees as provided by statutes, and other relief, both in law and equity, to which Plaintiff may show himself justly entitled;

C.   All punitive and statutory damages authorized by law;

D.   Pre-judgment and post-judgment interest; and

E.   Such further relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right.

Dated: New York, NY
June 22, 2022

Respectfully submitted,

**KRAKOWER DICHIARA LLC**

By:
_s/ Todd Krakower_____
Todd J. Krakower

100 Church St, 8th Fl
New York, NY 10007
T: (201) 746-6333
F: (347) 765-1600

*Attorneys for Plaintiff*